UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re | ) |
| | ) **JUDGE RICHARD L. SPEER** |
| Medcorp. Inc. | ) |
| | ) Case No. 11-3192 |
| Debtor(s) | ) |
| | ) (Related Case: 11-32339) |
| John Graham, Trustee | ) |
| | ) |
| Plaintiff(s) | ) |
| | ) |
| v. | ) |
| | ) |
| The Huntington National Bank | ) |
| | ) |
| Defendant(s) | ) |

**MEMORANDUM OPINION AND DECISION**

    This cause comes before the Court on the Motion for Summary Judgment filed by the Plaintiff/Trustee, John N. Graham. (Doc. No. 16). The Plaintiff's Motion for Summary Judgment is brought in support of his complaint to avoid certain prepetition transfers made to the Defendant, the Huntington National Bank. (Doc. No. 1). Against the Plaintiff's Motion for Summary Judgment, the Defendant filed an objection, with the Plaintiff then filing a reply thereto. (Doc. No. 18 & 22). The Court has now had the opportunity to review the arguments made by the Parties in support of their respective positions. Based upon this review, the Court, for the reasons set forth herein, finds that the Plaintiff's Motion for Summary Judgment should be Granted.

John Graham, Trustee v. The Huntington National Bank
Case No. 11-3192

## FACTS

There are three Debtors in this case: (1) MedCorp, Inc.; (2) Stickney Avenue Investment Properties, LLC; and (3) MedCorp E.M.S. South, LLC. (Hereinafter referred to collectively as the "Debtors"). The Debtors were formerly engaged in the business of operating an ambulance service, whereby they provided emergency and non-emergency transportation services for persons in need of medical care.

For their business operations, the Defendant, the Huntington National Bank (hereinafter the "Bank"), extended credit to the Debtors. The extension of credit included obligations set forth in a "Credit and Security Agreement," dated August 28, 2009 which provided for: (1) a revolving credit facility in the principal amount of $7,500,000.00; and (2) a term loan in the principal sum of $4,100,000.00. As of January 28, 2011, there was an outstanding balance on the revolving loan in the amount of $6,075,296.07, and a balance of $3,529,070.03 outstanding on the term loan.

In exchange for the Bank's extension of credit, the Debtors granted the Bank a security interest in substantially all of their assets. According to the Bank, its security interest extended to the vehicles the Debtors used to operate their business – these vehicles being primarily ambulances and other similar vehicles. The certificates of titles produced for these vehicles, however, do not show the existence of the Bank's lien on any of the titles. (Doc. No. 17). Also, there is no evidence that a notation of the Bank's lien had been entered into an automated processing system used by the clerk of the common pleas court of Ohio for recording liens on vehicles.

In June of 2011, the Debtors' business assets and operations were set to be sold to a third party through a state-court receivership. This sale, however, was stayed when, on June 10, 2011, the Debtors filed petitions in this Court for relief under Chapter 11 of the United States Bankruptcy

Code. An order was thereafter entered, providing for the joint administration of the Debtors' three bankruptcy cases.

On June 17, 2011, the Plaintiff, John Graham, was appointed as trustee for the Debtors' bankruptcy estate pursuant to § 1104 of the Code. During the administration of their case, the Court entered an order approving the Debtors' use of cash collateral. Among the terms of this Order, the Bank was granted a postpetition lien in estate assets. (Case No. 11-33239, Doc. No. 145). Specifically, the Order provided that, to the extent of any diminution in the Bank's interest in prepetition collateral, the Bank would granted a "replacement security interests and liens (to the same extent, validity, enforceability, perfection and priority as security interest and liens that Huntington had immediately preceding the Petition Date) . . . ."

The Court's cash collateral order then went on to further delineate the scope of the Bank's postpetition interest in estate property. First, the Order specified that:

> Nothing in this Order will be deemed to grant Huntington a lien or security interest on assets held by Debtor but not subject to Huntington's liens or security interest on the Petition Date, excepting only (i) a replacement lien equal to ten percent (10%) of fees paid to Debtor's receiver/custodian from Cash Collateral pursuant to the order of this Court, and (ii) a replacement lien equal to such other administrative expenses of Debtor or the Trustee paid from Cash Collateral; in either case Huntington shall be granted a corresponding replacement lien in any unencumbered assets, should they exist.

The Court's cash collateral Order then further provided:

> Notwithstanding anything contained in this Order to the contrary, including but not limited to this paragraph, Huntington shall have no right or interest in any avoidance actions or causes of action under sections 542, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or proceeds thereof,

Page 3

(collectively, the "Avoidance Actions") for or on account of the Replacement Liens.

On October 3, 2011, the Court entered an order approving the sale of substantially all of the Debtors' assets pursuant to Bankruptcy Code § 363. The parties to this sale and the terms of this sale were substantially identical to those originally proposed during the pendency of the state-court receivership. On September 23, 2011, the Trustee, citing to § 544(a)(1) of the Bankruptcy Code, commenced this proceeding to avoid any security interests or liens claimed by the Bank in those vehicles the Debtors formerly used to operate their business.

## DISCUSSION

In his Complaint, the Trustee asks that the Court enter a "judgment declaring that any interest Huntington may have possessed in any of the vehicles that was not properly perfected under Ohio law is avoided pursuant to 11 U.S.C. §544, and therefore, the Trustee may sell the vehicles free and clear of any lien Huntington claims to have upon the vehicles[.]" (Doc. No.1). This matter, as it requires the Court to make a determination concerning the validity, extent, or priority of liens in a bankruptcy case, is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). Thus, this Court has the jurisdictional authority to enter final orders and judgments in this proceeding. 28 U.S.C. § 157(b)(1).

### Legal Framework

The Bankruptcy Code recognizes two types of claims: (1) secured; and (2) unsecured.[1] *In re Reg'l Bldg. Sys., Inc.*, 273 B.R. 423, 469 (Bankr. D.Md. 2001). A secured claim is defined by the

---

[1] Unsecured claims are further divided into two categories: (1) unsecured, priority claims; and (2) unsecured, nonpriority claims. 11 U.S.C. § 507.

Page 4

Bankruptcy Code to mean "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a)(1). As used in this provision, the term 'lien' "means charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). This term is often used interchangeably with the term "security interest" which the Code defines as a "lien created by agreement." 11 U.S.C. § 101(51). *In re Spiniak*, 221 B.R. 732, 735 (W.D. Mich.1998).

The distinction between a secured creditor, holding a lien against estate assets, and an unsecured creditor, who does not have any specific interest in estate property, carries with it a number of implications. Of import, it is the general rule that liens will "pass through bankruptcy unaffected." *Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). As explained by the United States Supreme Court: "a bankruptcy discharge extinguishes only one mode of enforcing a claim – namely, an action against the debtor in personam – while leaving intact another – namely, an action against the debtor in rem." *Johnson v. Home State Bank*, 501 U.S. 78, 79, 111 S.Ct. 2150, 2151, 115 L.Ed.2d 66 (1991). This, however, is not always the case.

In certain circumstances, a creditor holding an otherwise valid lien may have that lien avoided through the bankruptcy process. But for a lien to be avoided in bankruptcy, the party seeking avoidance is required to take some sort of affirmative action to have the lien avoided. As well, the avoidance of the lien must be based upon a specific statutory provision. *CenPen Corp. v. Hanson*, 58 F.3d 89, 92–93 (4th Cir.1995).

In this matter, nothing submitted by the Trustee directly challenged the position espoused by the Bank that, based upon its "Credit and Security Agreement" with the Debtor, it held liens against substantially all of the Debtors' assets, including the vehicles formerly used by the Debtors in the operation of their business. Instead, it is the position of the Trustee that any security interests/liens

Page 5

claimed by the Bank in the Debtors' vehicles are now subject to avoidance as a part of this bankruptcy process. As authority for this position, the Trustee's Complaint relies on 11 U.S.C. § 544(a)(1).

### 11 U.S.C. § 544(a)(1)

Section 544(a)(1) of the Bankruptcy Code, otherwise known as the strong-arm clause, provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
>> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.]

The substance of § 544(a)(1) is to confer upon a bankruptcy trustee, at the commencement of a bankruptcy case, the status of a hypothetical judicial lien holder, and then to allow the trustee to avoid any liens claimed by a creditor in estate property to the extent that, as against the creditor's lien, the trustee's hypothetical judicial lien would be superior in right.

The party moving for the applicability of § 544(a)(1), here the Trustee, carries the burden of proof to show the applicability of the provision. *In re Brouillette*, 389 B.R. 214, 218 (Bankr. D.Kan. 2008). For his burden, the Trustee set forth in his Complaint that the liens held by the Bank in the Debtors' vehicles are subject to avoidance under § 544(a)(1) based on this deficiency: The liens were not properly perfected.

Page 6

John Graham, Trustee v. The Huntington National Bank
Case No. 11-3192

Perfection is the process by which a party, who seeks to claim an interest in a debtor's property, takes the necessary steps to protect its interest against competing claims in the same collateral, usually by providing notice of the interest. BLACK'S LAW DICTIONARY 1137 (9th ed. 1990). Perfection is to be contrasted with a lien's creation, sometimes called attachment, which concerns whether the lien is enforceable between the respective parties. *Drown v. Perfect (In re Giaimo)*, 440 B.R. 761, 766-68 (6th Cir. B.A.P. 2010).

Under the Uniform Commercial Code, a party obtaining a judicial lien on a debtor's property will normally take priority over an unperfected security interest. UCC 9-317. For purposes of § 544(a)(1), this means that a creditor holding an unperfected, or improperly perfected lien against a debtor when a bankruptcy case is filed may be subject to having their lien avoided by the trustee. *Malloy v. WilServ Credit Union (In re Harper)*, 516 F.3d 1180, 1182 (10th Cir. 2008); *see also Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1023 (6th Cir. 2001). (section 544(a)(1) is commonly employed to void unperfected liens and security interests in personal property). The policy rationale of § 544(a)(1) is to maximize the estate assets available to a debtor's general body of unsecured creditors by preventing the creation and enforcement of secret or undisclosed liens. *Consol. Partners Inv. Co. v. Lake*, 152 B.R. 485, 490 (Bankr. N.D.Ohio 1993).

Whether a lien is properly perfected and whether a judicial lien takes priority over an unperfected lien is a determination made according to applicable, nonbankruptcy law. *See Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (property rights in a debtor's assets are determined by state law). For this purpose, this means that Ohio law is applicable since the liens sought to be avoided by the Trustee are held against vehicles titled in Ohio.

Ohio law follows Article 9 of the Uniform Commercial Code by affording a judicial lien priority over an unperfected lien in personal property. As set forth in § 1309.317(A)(2) of the Ohio Revised Code:

Page 7

> (A) A security interest or agricultural lien is subordinate to the rights of:
>
>> (2) Except as otherwise provided in division (E) of this section, a person who becomes a lien creditor before the earlier of the time:
>>
>>> (a) The security interest or agricultural lien is perfected[.]

The creation of a security interest in a motor vehicle is also governed by Article 9 of Ohio's Uniform Commercial Code. *In re Giaimo*, 440 B.R. at 767 ("Article 9 of the UCC, as adopted and enacted by Ohio, governs her claim to a security interest in the Debtor's vehicle."). However, unlike most other interests in personal property, the determination of whether a security interest in a motor vehicle is properly perfected is governed not by Article 9, but by Ohio's "Certificate of Motor Vehicle Title Law," O.R.C. § 4505.13.

Under § 4505.13 it is provided:

> (B) Subject to division (A) of this section, any security agreement covering a security interest in a motor vehicle, if a notation of the agreement has been made by a clerk of a court of common pleas on the face of the certificate of title or the clerk has entered a notation of the agreement into the automated title processing system and a physical certificate of title for the motor vehicle has not been issued, is valid as against the creditors of the debtor, whether armed with process or not, and against subsequent purchasers, secured parties, and other lienholders or claimants.

Therefore, pursuant to § 4505.13(B), motor vehicles – not subject to division (A) of this section, regarding dealer inventory – may only be perfected by two methods.

First, if a certificate of title has not been issued, the lien may be perfected by the clerk of the common pleas court noting the lien on the automated title processing system established by the State of Ohio. Second, and more commonly, where a certificate of title has been issued for a motor vehicle, a creditor can only perfect their interest in the vehicle by noting the security agreement on

the vehicle's certificate of title. As recently explained by the Bankruptcy Appellate Panel for the Sixth Circuit:

> Under Ohio law, perfection of a security interest is generally accomplished through the filing of a financing statement. However, this method of perfection is inapplicable in the case of motor vehicles. Under Ohio's Certificate of Motor Vehicle Title Act, except for vehicles held as inventory, the notation of a lien on the vehicle's certificate of title is the exclusive manner by which a security interest is perfected in a motor vehicle.

*In re Giaimo*, 440 B.R. at 765.

As presented to the Court, when the Debtors commenced their bankruptcy cases on June 17, 2011, none of the certificate of titles issued for the Debtors' vehicles reveals a lien held by the Bank against the vehicles. At this same time, there is also no indication that, for those vehicles owned by the Debtors, but for which no certificate of title was issued, the clerk of the common pleas court had entered a notation of the Bank's lien into the automated title processing system. Accordingly, for purposes of O.R.C. § 4505.13(B), any security interests held by the Bank in the Debtors' vehicles were not perfected, thereby subjecting the interests to avoidance by the Trustee under § 544(a)(1).

In opposition to the Trustee's avoidance action, the Bank did not take direct issue with the above deficiencies as they pertain to O.R.C. § 4505.13(B). Instead, it is the Bank's position that any deficiencies as they relate to O.R.C. § 4505.13(B) were cured by the cash collateral order entered by this Court. In this Order, the Bank was granted a "replacement lien" on certain unencumbered estate assets for the purpose of providing it with "adequate protection" of its prepetition interests in the Debtors' property.

The purpose of adequate protection is to guard a secured creditor against any decrease in the value of its collateral resulting from depreciation, destruction or the debtor's use of the collateral.

Page 9

John Graham, Trustee v. The Huntington National Bank
Case No. 11-3192

*In re Panther Mountain Land Development*, LLC, 438 B.R. 169, 188 (Bankr. E.D.Ark. 2010). The concept of adequate protection is founded on the Fifth Amendment to the United States Constitution, and its protection of private property interests. *Id.*

Consistent with the Bank's position, a court may, as a means of affording a creditor "adequate protection" of its interest in a debtor's property, grant a creditor a "replacement lien" in estate property. In § 361(2) of the Bankruptcy Code, it is provided:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by–
>
> (2) providing to such entity an additional or *replacement lien* to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property[.]

(emphasis added). This provision is often used, as is the situation here, where a creditor's lien has been cut off by the effect of § 551(a)[2] which operates to generally nullify any lien resulting from any security agreement entered into by the debtor before the commencement of the case to the extent that such a lien would encumber estate property. Collier on Bankruptcy P 361.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Because matters concerning "adequate protection" are "core proceedings," thereby conferring on the bankruptcy court jurisdiction to enter final order and judgments, the extent and scope of a replacement lien afforded to a creditor under § 361(2) is delineated entirely by the court's order

---

[2]

Section 551(a) provides that, "Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."

Page 10

providing the lien. *In re UAL Corp.*, 297 B.R. 710, 712 (Bankr. N.D.Ill. 2003). To this end, a replacement lien conferred upon a creditor under § 361(2) may enlarge, diminish or simply leave in place the scope of a creditor's prepetition interest in a debtor's property.

It would also appear that, consistent with the Bank's position, a lien afforded to a creditor under § 361(2) may be delineated in such a way so as to cure prepetition defects that existed in the creditor's lien, such as in the Bank's situation where its prepetition liens were not properly perfected. For example, in the case of *Small v. Beverly Bank*, the Seventh Circuit Court of Appeals held that, notwithstanding that a lien afforded by a bankruptcy court's order was not perfected in accordance with procedures provided under applicable state law, the lien holder was still entitled to rely on the language of the bankruptcy court's order which provided that its lien would be valid, perfected and enforceable without need for any further action. 936 F.2d 945, 948-49 (7th Cir.1991) (involving a superpriority lien afforded to a creditor under § 364). *See also In re Murphy*, 226 B.R. 601, 608 (Bankr. M.D.Tenn.1998) (as adequate protection for the unavoidable portion of a creditor's lien in a motor vehicle, the court conditioned turnover of the vehicle on the debtor noting the creditor's lien on the vehicle's title).

The Bank's position, thus, necessarily hinges on whether this Court's cash collateral order can be read so as to insulate the Bank from a lien avoidance action under § 544(a)(1) by affording it a first priority and unavoidable perfected lien against the Debtors' vehicles.

As with any order, the court entering the order is in the best position to interpret it. *See, e.g., Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 941 (4th Cir.1997) ("The bankruptcy court was in the best position to interpret its own orders."). When this Court issues an order, affording a creditor a lien in estate assets, this general bankruptcy tenet is applied: Absent express statutory authority or unusual circumstances, a creditor should not be placed in a better position simply on account of a debtor's bankruptcy. *Davis v. Davis*, 170 F.3d 475 (5th Cir.1999). As it regards the

Page 11

Bank's replacement lien, this Court's cash collateral order applies this principle by initially providing that the replacement lien would only extend "to the same extent, validity, enforceability, perfection and priority as security interest and liens that Huntington had immediately preceding the Petition Date . . . ."

Specific language contained in a court order, of course, will normally override language of a more general nature. Relying on this construct, the Bank cites to the following language in this Court's cash collateral order as the basis for its position:

> Nothing in this Order will be deemed to grant Huntington a lien or security interest on assets held by Debtor but not subject to Huntington's liens or security interest on the Petition Date, excepting only (i) a replacement lien equal to ten percent (10%) of fees paid to Debtor's receiver/custodian from Cash Collateral pursuant to the order of this Court, and (ii) a replacement lien equal to such other administrative expenses of Debtor or the Trustee paid from Cash Collateral; in either case Huntington shall be granted a corresponding replacement lien in any unencumbered assets, should they exist.

Consistent, therefore, with this Order, the Bank holds a replacement lien on unencumbered estate assets in an amount equal to total administrative expenses and 10% of receiver's fees paid from its cash collateral. This, according to the Bank, affords it an interest in the Debtors' vehicles because its "replacement lien would encumber the motor vehicles' sale proceeds, even if it has no security interest in the vehicles themselves, it would be entitled to these proceeds." (Doc. No. 18, at pg. 4).

The Bank's reading of its interest in the Debtors' motor vehicles, however, misconstrues this Court's Order. In order for a creditor to have, as the Bank argues, an interest in any "proceeds" arising from a sale of collateral, the creditor must have, in the first instance, a valid and enforceable interest in the underlying collateral. Proceeds, in this regard, may be defined as "whatever is received

Page 12

upon the sale, exchange, collection or other disposition of collateral or proceeds." BLACK'S LAW DICTIONARY 1205 (9th ed. 1990) (defining proceeds). *See also* UCC 9-102(64).[3]

In this case, however, by virtue of the Trustee exercising his strong-arm powers under § 544(a), which arise immediately upon the commencement of a bankruptcy case, any prepetition interests held by the Bank are retroactively void from the time the Debtors filed their bankruptcy cases. *McRoberts v. Transouth Financial (In re Bell)*, 194 B.R. 192, 197 (Bankr. S.D.Ill.1996). Consequently, for purposes of their bankruptcy cases, the Bank had no interest in the Debtors' vehicles, and thus the Bank cannot, by definition, have an interest in any "proceeds" received from the sale of the vehicles. In this regard, the effect of § 544(a)(1) is to entirely void a creditor's interest in a debtor's property – as opposed to subordinating the interest, as is often the case under state law – leaving the effected creditor with only an unsecured claim against the debtor's estate. *Id.*, at 195. The avoided interest is then automatically preserved for the exclusive benefit of the bankruptcy estate. 11 U.S.C. § 551.

Even leaving the above discussion aside, there exists a further impediment to the Bank's position. In this Court's cash collateral order, it was provided:

---

3

Defining proceeds to mean the following property:

> (A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral;
> (B) whatever is collected on, or distributed on account of, collateral;
> (C) rights arising out of collateral;
> (D) to the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; or
> (E) to the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral.

Page 13

> Notwithstanding anything contained in this Order to the contrary, including but not limited to this paragraph, Huntington shall have no right or interest in any avoidance actions or causes of action under sections 542, *544*, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or proceeds thereof, (collectively, the "Avoidance Actions") for or on account of the Replacement Liens.

(emphasis added). This provision, by excluding the Bank from any interest in an avoidance action brought by the Trustee under § 544(a), clearly shows that it was not the intent of this Court's cash collateral order to protect the Bank, or for that matter any other creditor, from an avoidance action brought by the Trustee. To hold otherwise would render the provision largely superfluous, thereby going contrary to settled rules of interpretation. *See* 2A Sutherland Statutory Construction § 46:5 (7th ed.).

In summation, any prepetition security interest arising in favor of the Bank against the Debtors' vehicles is subject to avoidance by the Trustee under § 544(a)(1) as the interests were not perfected in accordance with Ohio law. Moreover, contrary to the Bank's position, the replacement lien afforded to it by this Court's cash collateral order did not extend to, and was specifically excluded, from any action brought by the Trustee to avoid the Bank's interest in the Debtors' vehicles. As well, the replacement lien cannot be read so as to extend to the proceeds received from any sale of the vehicles by the Trustee.

Before concluding, one final issue needs to be addressed. The Bank, in its response to the Trustee's Motion for Summary Judgment, suggested that there is a procedural defect in the Trustee's action. Specifically, the Bank stated that it "believes the proper statute for this action is 11 U.S.C. § 506 as Plaintiff's declaratory judgment count seeks to determine the validity, priority, and extent of security interests against the Debtors' motor vehicles." (Doc. No. 18). The Court disagrees.

Page 14

Section 544(a) specifically applies to an action brought by a trustee to avoid an interest claimed by a party in estate property. In turn, such an action is commenced and then prosecuted by a trustee through an adversary proceeding. *See, e.g.*, *In re Together Development Corp.*, 227 B.R. 439, 442 (Bankr. D.Mass. 1998) ("Avoidance should normally be accomplished through an adversary proceeding."); FED.R.BANKR.P. 7001. In any event, the Bank has been an active participant in the Debtors' legal affairs, both prepetition and postpetition. As well, in the instant matter, the Bank filed an answer and a response to the Trustee's Motion for Summary Judgment. As such, the Bank was fully aware of the relief sought by the Trustee and cannot be considered prejudiced by any procedural defect that may exist with respect to this action brought by the Trustee.

For the reasons set forth herein, the Court finds that the Motion for Summary Judgment brought by the Plaintiff/Trustee, John Graham, should be Granted, and that any interest held by the Bank in the Debtors' motor vehicles is subject to avoidance by the Trustee pursuant to 11 U.S.C. § 544(a)(1). In reaching the conclusions found herein, the Court has considered all the evidence, exhibits and arguments of counsel, regardless of whether they are specifically referred to in this Opinion.

John Graham, Trustee v. The Huntington National Bank
Case No. 11-3192

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment filed by the Plaintiff/Trustee, John Graham, be, and is hereby, GRANTED.

It is **FURTHER ORDERED** that any interest claimed by the Defendant, the Huntington National Bank, in vehicles subject to administration by the Trustee as a part of the Debtors' bankruptcy estate, are avoided and declared void pursuant to 11 U.S.C. § 544(a). The Trustee is authorized to sell said vehicles in accordance with 11 U.S.C. § 363.

It is **FURTHER ORDERED** that, in accordance with 11 U.S.C. § 551, the interests avoided in the above order are hereby preserved for the benefit of the Debtors' bankruptcy estate.

Dated: March 30, 2012

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 16

# CERTIFICATE OF SERVICE

Copies were mailed this 30th day of March, 2012 to:


John N Graham
5151 Monroe Street, #245
Toledo, OH 43623

Reginald S Jackson, Jr
Connelly, Jackson & Collier LLP
405 Madison Ave
#2300
Toledo, OH 43604

Timothy P Nackowicz
Connelly, Jackson & Collier LLP
405 Madison Ave
Suite 2300
Toledo, OH 43604

H Buswell Roberts
2001 South Main Street Unit 206-A
Blacksburg, VA 24060

THE HUNTINGTON NATIONAL BANK
c/o Sharon Speyer, President
Huntington Northwest Ohio Region
519 Madison Avenue
Toledo, OH 43604

Daniel C. Wolters
Cavitch, Familo & Durkin Co., LPA
1300 E. 9th St.
20th Floor
Cleveland, OH 44114


                                                  /s/Dawn Serna-Gensch
                                                  Deputy Clerk, U.S. Bankruptcy Court